UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
IMELDA G. PRICE and KENNETH PRICE, )
                                   )
    Plaintiffs,                    )
                                   )
                                   )
    v.                             )   Civil Action No. 16-2382 (RBW)
                                   )
STRYKER CORPORATION, et al.,       )
                                   )
    Defendants.                    )
                                   )
                                   )
_____)

# MEMORANDUM OPINION

The plaintiffs, Imelda Price and her husband, Kenneth Price, initiated this products liability action against the defendants, Stryker Corporation, Stryker Sales Corporation, and Stryker Sustainability Solutions, Inc. See generally Amended Complaint ("Am. Compl."). Currently before the Court is the defendants' Motion to Dismiss Amended Complaint ("Defs.' Mot."), which seeks dismissal for failure to state a claim upon which relief may be granted. See Defs.' Mot. at 1. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant in part and deny in part the defendants' motion to dismiss.

## I. BACKGROUND

The following allegations are asserted in the Amended Complaint. On July 17, 2014, Imelda Price, "an operating room nurse at the Washington Hospital Center, was directed by the

---

[1] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the Defendants' Memorandum in Support of Their Motion to Dismiss Plaintiffs' Amended Complaint ("Defs.' Mem."); (2) the Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Complaint ("Pls.' Opp'n"); and (3) the Defendants' Reply in Further Support of Their Motion to Dismiss Plaintiffs' Amended Complaint ("Defs.' Reply").

surgeon during the course of a laparoscopic surgery to adjust the monitor [that] is part of . . . a 'Stryker Standard Video Cart.'" Am. Compl. ¶ 5. The Stryker Standard Video Cart ("Stryker Cart") is "manufactured and/or distributed by Stryker"[2] and "consists of the electronic equipment contained in a cabinet-type structure." Id. The top of the Stryker Cart contains "an armature and monitor, the latter of which allow the surgeon to see inside the patient while performing a surgical procedure." Id. The plaintiff "attempted to move the monitor pursuant to the instructions of the surgeon . . . and while doing so[,] the monitor and possibly the armature became detached and fell and struck the [p]laintiff[,] causing injury to her." Id. ¶ 6.

On November 18, 2016, the plaintiffs filed suit against the defendants in the Superior Court of the District of Columbia, alleging negligence, strict liability, breach of implied warranty, and loss of consortium. See generally Complaint. On December 6, 2016, the defendants removed the case to this Court, see Notice of Removal From State Court Under 28 U.S.C. §§ 1332, 1441, and 1446 at 1, and filed a motion to dismiss, see Defendants' Motion to Dismiss Complaint at 1. On December 20, 2016, the plaintiffs amended their complaint, alleging the same four tort claims.[3] See generally Am. Compl. Specifically, the plaintiffs allege that (1) the Stryker Cart "was defective in that it lacked a locking mechanism that would prevent the monitor and armature from detaching," id. ¶ 12; see also id. ¶ 23(C); (2) the defendants "failed to properly service and maintain the product" onsite, id. ¶ 18(A); and (3) the defendants "failed to warn the [p]laintiff of the defect in the product," id. ¶¶ 18(B), 23(A). The defendants now move

---

[2] The Amended Complaint refers to the three defendants collectively, see Am. Compl. ¶ 4, without identifying each defendant's alleged role in designing, manufacturing, or distributing the Stryker Cart, see generally id. The defendants do not identify their respective roles either. See generally Defs.' Mem.; Defs.' Reply.

[3] "Because the plaintiff[s] timely amended [their] complaint, and because [the defendants] filed separate motions to dismiss the plaintiff[s'] First Amended Complaint, the Court will deny [the defendants'] motion[]to dismiss the plaintiff[s'] original complaint as moot." Abdus-Sabur v. Hope Vill., Inc., 221 F. Supp. 3d 3, 7 n.2 (D.D.C. 2016) (Walton, J.).

2

to dismiss all of the claims asserted in the Amended Complaint pursuant to Rule 12(b)(6). See Defs.' Mot. at 1.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether the complaint properly "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a) requires only that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "detailed factual allegations" are not required, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," id. Rather, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint alleging "facts [which] are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

"In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). However, conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III.   ANALYSIS

### A.   The Loss of Consortium Claim

The parties disagree as to whether District of Columbia or Virginia law applies to the loss of consortium claim.[4]  See Defs.' Mem. at 4–5; Pls.' Opp'n at 2–6.  "A choice of law issue arises when the facts underlying a legal issue implicate multiple jurisdictions." Barimany v. Urban Pace LLC, 73 A.3d 964, 967 (D.C. 2013).  "As a general matter, [the Court] must apply the choice-of-law rules of the jurisdiction in which [it] sit[s]—namely, the District of Columbia." Wu v. Stomber, 750 F.3d 944, 949 (D.C. Cir. 2014).

The District of Columbia choice-of-law analysis requires two steps.  Parnigoni v. St. Columba's Nursery Sch., 681 F. Supp. 2d 1, 11–12 (D.D.C. 2010) (Walton, J.).  First "the [C]ourt must . . . determine if there is a conflict between the laws of the relevant jurisdictions." Id. at 12 (quoting Young Women's Christian Ass'n of Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada, 275 F.3d 1145, 1150 (D.C. Cir. 2002)).  "If no conflict exists, District of Columbia law applies by default."  Magee v. Am. Inst. of Certified Pub. Accountants, __ F. Supp. 3d __, __, 2017 WL 1183950, at *2 (Mar. 29, 2017) (Walton, J.).  A conflict exists regarding the loss of consortium claim because the District of Columbia recognizes this claim, see Stutsman v. Kaiser Found. Health Plan of Mid-Atl. States, Inc., 546 A.2d 367, 373 (D.C. 1988) ("This jurisdiction has long recognized that the tort of loss of consortium is a distinct cause of action for injury to the marriage itself . . . ."), while Virginia does not, see id. at 372 ("Virginia . . . has abrogated this common law right of action and does not permit a husband to

---

[4] The Court will conduct a choice-of-law analysis for the loss of consortium claim only because that is the sole claim for which the parties have raised a dispute as to which jurisdiction's laws should apply.  See Econ. Research Servs., Inc. v. Resolution Econ., LLC, 208 F. Supp. 3d 219, 229 n.8 (D.D.C. 2016) ("[W]here all parties assume that D.C. law applies, '[t]he Court need not and does not question the parties' assumptions on that point.'" (alterations in original) (quoting Beyene v. Hilton Hotels Corp., 815 F. Supp. 2d 235, 248 (D.D.C. 2011))); Haynes v. Navy Fed. Credit Union, 825 F. Supp. 2d 285, 293 n.10 (D.D.C. 2011) (same).

recover damages from a third party for loss of consortium due to injuries negligently inflicted upon his wife.").

Because a conflict exists, the Court moves to the second step of the conflicts-of-law analysis. "To determine which jurisdiction's substantive law governs a dispute, District of Columbia courts blend a 'governmental interest analysis' with a 'most significant relationship' test." Oveissi v. Islamic Republic of Iran, 573 F.3d 835, 842 (D.C. Cir. 2009) (quoting Hercules & Co. v. Shama Rest. Corp., 566 A.2d 31, 40–41 n.18 (D.C. 1989)). In determining the underlying governmental interest, the Court may look to both the legislature as well as the common law established by the state's highest court. See Williams v. Williams, 390 A.2d 4, 6 (D.C. 1978) (relying on Maryland's policy interest as established by the Court of Appeals of Maryland in its choice-of-law analysis).

The defendants argue that Virginia law should apply to the loss of consortium claim because that claim "is governed by 'the law of the state where the marriage is domiciled' rather than the law of the state where the wrong occurred." Defs.' Mem. at 4 (quoting Cardenas v. Muangman, 998 A.2d 303, 312 (D.C. 2010)). In response, the plaintiffs argue that the governmental interest analysis compels this Court to apply District of Columbia law because the District "has the greater interest in ruling" on the issue of loss of consortium, whereas "Virginia has little if any interest in whether a consortium claim is recognized herein other than to the extent that the allowance of such a claim promotes its government interest in its citizens achieving maximum recovery." See Pls.' Opp'n at 2–3. The plaintiffs cite various cases, see id. at 3–5, in support of their position that "Virginia [c]ourts either at the federal or state level have consistently . . . allow[ed] a loss of consortium claim to proceed in Virginia where the injury is governed by the law of another jurisdiction which allows such claims," id. at 5.

5

The Court agrees with the defendants that Virginia law applies to this claim because District of Columbia law is clear—"[a]s Virginia does not recognize a claim for loss of consortium brought by a husband, . . . no such claim [may] be brought in the District by a plaintiff who resides in Virginia with his wife." Cardenas, 998 A.2d at 311–12; see also Parnigoni, 681 F. Supp. 2d at 13 ("[U]nder this jurisdiction's choice of law analysis, the law governing the plaintiffs' loss of consortium claims is Virginia law, which is where [the plaintiffs] are domiciled."). The facts in this case are virtually identical to those in Cardenas—in both cases, the plaintiffs resided in Virginia, see Cardenas, 998 A.2d at 312; Am. Compl. ¶ 1, and "the tortious act[s] occurred in the District," Cardenas, 998 A.2d at 312; Am. Compl. ¶¶ 5–6 (noting that the injury occurred in Washington Hospital Center). And in that case, the District of Columbia Court of Appeals held that "the trial court properly dismissed the loss of consortium claim," 998 A.2d at 313, after concluding that

> [a]lthough the District may have "strong interest in punishment and deterrence of wrongful conduct causing harm to . . . plaintiffs within its borders," that interest is satisfied by applying the District's substantive tort law to the wrongful conduct itself, and is less concerned with regulating the rights of married partners in resulting damage awards, inter sese, a matter in which Virginia has a superior interest vis à vis its residents than does the District of Columbia,

id. at 312 (citations omitted). Cardenas also forecloses the plaintiffs' argument that the loss of consortium claim should proceed because Virginia courts have allowed such claims when applying another jurisdiction's laws, see Pls.' Opp'n at 5, as "the difference in application of another jurisdiction's conflict of law rules under a different test does not determine the outcome of [the Court's] analysis," Cardenas, 998 A.2d at 312. Accordingly, the Court applies Virginia law to the loss of consortium claim, and because Virginia does not recognize loss of consortium as a valid cause of action, the Court must dismiss this claim.[5]

---

[5] As a result of this ruling, Imelda Price is now the sole plaintiff in this matter.

**B.     The Breach of Implied Warranty Claim**

The defendants argue that the plaintiff's breach of implied warranty claim must be dismissed because it is duplicative of her strict liability claim. See Defs.' Mem. at 11 (noting that both claims are "based upon the same factual allegations"). The Court agrees.

In the District of Columbia, "the difference between strict liability in tort and implied warranty, if any, [is] conceptual," Wainwright v. Wash. Metro. Area Transit Auth., 903 F. Supp. 133, 139 (D.D.C. 1995) (quoting Cottom v. McGuire Funeral Serv., Inc., 262 A.2d 807, 808 (D.C. 1970)), because "[b]reach of implied warranty and strict liability in tort are expressions of a single basic public policy as to liability for defective products," id. at 140 (quoting Fisher v. Sibley Mem'l Hosp., 403 A.2d 1130, 1133 (D.C. 1979)). "[T]his rule applies only in cases . . . where a third party is bringing an action against a manufacturer of a product, and thus, privity of contract is absent." In re Fort Totten Metrorail Cases Arising Out of the Events of June 22, 2009, 793 F. Supp. 2d 133, 152 (D.D.C. 2011) (Walton, J.); see also Wainwright, 903 F. Supp. at 139 ("Where there are no issues unique to warranty, a claim of strict liability in tort is effectively made out in a complaint for breach of warranty.") Accordingly, "where a plaintiff alleges claims for both strict products liability and breach of implied warranties based on allegedly defective products against a party not in privity with the plaintiff, the implied warranty claims must be dismissed because the actions are the same." In re Fort Totten, 793 F. Supp. 2d at 152.

The defendants are correct that the plaintiff's breach of implied warranty claim is based upon the defendants' same underlying conduct as her strict liability claim; namely, their design of the Stryker Cart. Compare Am. Compl. ¶¶ 20–21 (alleging that the defendants "breach[ed] [their] implied warranty of merchantability" because the Stryker Cart "was unfit for [its] ordinary purpose" in that "a different design [would have made] the product safer" "for use in

7

the operating room"), with id. ¶ 23 (alleging that the defendants are strictly liable because the Stryker Cart "contained a defect making it unreasonably dangerous" "for use in the operating room"). Moreover, the Amended Complaint does not contain any allegations that the plaintiff is in contractual privity with the defendants, see In re Fort Totten, 793 F. Supp. 2d at 152, or plead any other "issues unique to warranty, like disclaimer or notice," Payne v. Soft Sheen Prods., 486 A.2d 712, 720 (D.C. 1985); see generally Am. Compl. [6] Accordingly, the plaintiff's breach of implied warranty claim is duplicative of her strict liability claim.

The plaintiff argues that if the Court finds that her strict liability and breach of implied warranty claims are redundant, the decision regarding which claim should proceed should be one of "election . . . by the [p]laintiff at the time of jury instructions." Pls.' Opp'n at 8 (citing Bowler v. Stewart-Warner Corp., 563 A.2d 344, 358 (D.C. 1989) (Ferren, J., concurring)). Upon reviewing Bowler, the Court concludes that the plaintiff's reliance on this case is misplaced.

In Bowler, the District of Columbia Court of Appeals held that a trial court erred in instructing the jury on both strict liability and implied warranty of merchantability. See 563

---

[6] The plaintiff asserts in her opposition that she, as a hospital employee, is in contractual privity with the defendants, see Pls.' Opp'n at 8 ("The [p]laintiff at the time of this incident was an employee of the Washington Hospital Center. There was a contract between Stryker and the Washington Hospital Center wherein Stryker as a merchant sold or otherwise distributed the product to the Washington Hospital Center who is the employer of the [p]laintiff. That establishes privity." (internal citation omitted)), but "the plaintiff cannot amend her complaint by way of her opposition brief," Koker v. Aurora Loan Servicing, LLC, 915 F. Supp. 2d 51, 63 n.3 (D.D.C. 2013) (Walton, J.). Moreover, the plaintiff's reliance on Leslie v. LaPrade, 726 A.2d 1228 (D.C. 1999), as support for her allegation that she is in privity with the defendants is analytically flawed. See Pls.' Opp'n at 8. That case concerned privity in the context of res judicata, see Leslie, 726 A.2d at 1230–31, not contractual privity to support a breach of implied warranty claim, see Privity, Black's Law Dictionary (10th ed. 2014) (defining "privity of contract" as "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so"); see also Bowler, 563 A.2d at 349 (Ferren, J., concurring) ("[A]s an employee of the purchaser, [the plaintiff] lacked privity with the manufacturer."). The plaintiff's argument that "it is unknown as to whether or not the [d]efendants will be raising any disclaimer or notice issues and as such it is premature . . . to rule on the issue of the merger of these two . . . claims," Pls.' Opp'n at 9, misses the mark because disclaimer or notice issues are defenses that the defendants could raise in a breach of warranty action sounding in contract, but not to challenge "warranty liability for defectively manufactured products, '[which are] no longer [ ] dependent upon any contractual relationship between the manufacturer and the ultimate consumer or user,'" Payne, 486 A.2d at 719 (quoting Picker X-Ray Corp. v. Gen. Motors Corp., 185 A.2d 919, 921 (D.C. 1962)). Therefore, because the plaintiff's breach of warranty claim is based upon a defective product, notice and disclaimer are not relevant defenses.

A.2d at 347. As a result, the Court reversed the judgment and remanded the case for a new trial. Id. at 348.

In his concurrence, Judge Ferren wrote separately to "answer . . . the ultimate question . . . [of] how the trial court should instruct the jury on remand." Id. at 349 (Ferren, J., concurring). Judge Ferren "believe[d] the trial court must permit the plaintiff to elect which theory of recovery should be submitted to the jury" because he did not "perceive [a] basis for taking that choice away from the party who brought the suit." Id. at 358. Judge Ferren also noted, however, that "the standards of liability are the same under [strict liability] and [breach of implied warranty], respectively, . . . and . . . are intended to mean the same thing." Id. at 357. Judge Ferren's concurring opinion that the plaintiff should have the right to "elect which theory of recovery should be submitted to the jury," id. at 358, is not binding on this Court, and the plaintiff did not cite any case adopting this concurrence, nor could the Court find any case in which a court permitted the plaintiff to wait until a jury is going to be instructed to elect his or her theory of recovery with regard to duplicative breach of implied warranty and strict liability claims. To the contrary, the undersigned and other members of this Court have consistently dismissed duplicative breach of implied warranty claims. See, e.g., Kubicki ex rel. Kubicki v. Medtronic, No. 12–00734, 2013 WL 1739580, at *14 (D.D.C. Mar. 21, 2013) (dismissing the plaintiffs' breach of implied warranty claim because it was "duplicative of their strict products liability claim"); In re Fort Totten, 793 F. Supp. 2d at 152 (dismissing the plaintiffs' breach of implied warranty claims because "the actions are the same" as their strict liability claims); Webster v. Pacesetter, Inc., 259 F. Supp. 2d 27, 38 (D.D.C. 2003) (dismissing the plaintiffs' breach of implied warranty claim "because 'a breach of warranty claim is not actionable in coordination with a products liability claim'" (quoting Dyson ex rel. Monroe v. Winfield, 113 F.

9

Supp. 2d 35, 42 (D.D.C. 2000))). Because the plaintiff's breach of implied warranty and strict liability claims are duplicative, the breach of implied warranty claim must be dismissed.[7]

**C.     The Design Defect Claim**

As noted above, the plaintiff asserts three theories underlying both her negligence and strict liability claims: a design defect, see Am. Compl. ¶¶ 12, 23(C), a failure to maintain the Stryker Cart, see id. ¶ 18(A), and a failure to warn, see id. ¶¶ 18(B), 23(A); see also Warner Fruehauf Trailer Co. v. Boston, 654 A.2d 1272, 1274 (D.C. 1995) ("A product may be found defective for [strict liability] purposes if it has one of three shortcomings: (1) a manufacturing defect; (2) an absence of sufficient warnings or instructions; or (3) an unsafe design."). Although the defendants move to dismiss both the negligence and the strict liability claims in their entirety pursuant to Rule 12(b)(6), see Defs.' Mot. at 1, they only attack the sufficiency of the plaintiff's design defect claim, see Defs.' Mem. at 6 (stating that the plaintiff's negligence and strict liability claims must be dismissed because the plaintiff "fail[ed] to plead how the product at issue was defective[, and] fail[ed] to sufficiently plead how the purported defect caused [the plaintiff's] injuries"). Because the defendants fail to put forth any arguments regarding why the plaintiff's failure to warn or failure to maintain claims must be dismissed, see generally id., the Court concludes that the defendants' motion to dismiss is limited to the plaintiff's design defect claim.

"The same factors are considered in both a negligent design case and a strict liability case. However, in a negligence case the focus is on the manufacturer's conduct and not on the

---

[7] The plaintiff having failed to show how she is somehow prejudiced by the Court's refusal to allow her to elect which theory of recovery should proceed, the Court concludes that the plaintiff will not suffer any harm as a result of the Court's dismissal of the breach of implied warranty claim because the underlying theory of liability is duplicative of the strict liability claim.

10

product itself." Webster, 259 F. Supp. 2d at 38 (citing Warner, 654 A.2d at 1277 n.13); see also Romero v. ITW Food Equip. Grp., LLC, 987 F. Supp. 2d 93, 100 (D.D.C. 2013) (same).

To successfully plead a claim of negligence in the District of Columbia, the plaintiff must allege "(1) a duty of care owed by the defendant[s] to the plaintiff, (2) a breach of that duty by the defendant[s], and (3) damage to the plaintiff, proximately caused by the breach of duty." Powell ex rel. Ricks v. District of Columbia, 634 A.2d 403, 406 (D.C. 1993). In a claim alleging negligent design of a product, the plaintiff must first plead that the defendants, "as manufacturer[s], w[ere] under a duty to design a reasonably safe [product]." Westinghouse Elec. Corp. v. Nutt, 407 A.2d 606, 609 (D.C. 1979). "This duty of care includes the adoption of reasonable safety devices[, and w]hat constitutes 'reasonable care' will vary with the circumstances, and involves 'a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of precaution which would be effective to avoid the harm.'" Id. at 610 (quoting 2 Harper & James, The Law of Torts § 28.4, at 1542 (1956)). "In a design case, as in other areas of tort law, liability is imposed only for the creation of an unreasonable danger," id. at 609–10, and therefore, the plaintiff must next plead that the defendants breached their duty "of reasonableness in designing the [product] 'so as to make it not accident-proof, but safe for the use for which it was intended,'" id. at 610 (footnote omitted) (quoting Pike v. Frank G. Hough Co., 467 P.2d 229, 232 (Cal. 1970)). Finally, the plaintiff must plead that her "injuries [we]re caused by the lack of reasonable care in adopting a safe plan or design." Id. (quoting Turner v. Am. Motors Gen. Corp., 392 A.2d 1005, 1007 (D.C. 1978)).

To plead a strict liability cause of action, the plaintiff must plead that:

(1) the seller was engaged in the business of selling the product that caused the harm; (2) the product was sold in a defective condition unreasonably dangerous to the consumer or use; (3) the product was one which the seller expected to and did reach the plaintiff consumer or user without any substantial change from the

11

condition in which it was sold; and (4) the defect was a direct and proximate cause of the plaintiff's injuries.

Warner, 654 A.2d at 1274; see also Word v. Potomac Elec. Power Co., 742 A.2d 452, 459 (D.C. 1999) ("This court has recognized the principles of strict liability in tort set forth in Restatement (Second) of Torts § 402A (1965)."). The District of Columbia Court of Appeals noted in Warner that to show that a product is unreasonably dangerous, "the plaintiff must 'show the risks, costs and benefits of the product in question and alternative designs,' and 'that the magnitude of the danger from the product outweighed the costs of avoiding the danger.'" Id. at 1276 (quoting Hull v. Eaton Corp., 825 F.2d 448, 453 (D.C. Cir. 1987)).

### 1. The Alleged Defect

The defendants argue that the plaintiff's negligence and strict liability claims must be dismissed because "[t]he Amended Complaint fails to adequately plead any factual allegations regarding the alleged defect that plausibly creates a duty by the [ ] [d]efendants and a breach of such a duty." Defs.' Mem. at 7; see also id. at 8–9 (arguing that the plaintiff's strict liability design defect claim should be dismissed "for the same reasons the negligen[t design] claim should be dismissed," namely, because the plaintiff failed to "identify the defect in the product because [she] [her]sel[f] do[es] not know whether the monitor, the armature, or both detached and struck her"). Upon review of the Amended Complaint, the Court disagrees.

The plaintiff asserts in her Amended Complaint that the Stryker Cart "created an unreasonable danger" because the defendants did not "install[] a locking mechanism that would prevent detachment" of the armature or monitor, "and an ordinary consumer in this instance would expect [the defendants] to use that different design since the magnitude of the danger from the design outweighed the costs and disadvantages of using the safer design." Am. Compl. ¶ 18(C); see also id. ¶ 23(C) (alleging that the defendants are "strictly liable based on the design

of the product" because the absence of a locking mechanism "created an unreasonable danger"). The Amended Complaint also alleges that the defendants are "strictly liable based on the design of the product," Am. Compl. ¶ 23(C), because the absence of "a locking mechanism that would prevent the monitor and armature from detaching," id. ¶ 12, "created an unreasonable danger," id. ¶ 23(C). The plaintiff supports her allegation of unreasonable dangerousness by alleging that "[t]here was a feasible way to use a different design to make the product safer by installing a locking mechanism that would prevent detachment," and that the defendants should have

> use[d] that different design when considering the usefulness and desirability of the product, the probable seriousness of the danger posed by the product's design, the likelihood that such danger would occur, the availability of a safer product, [and the defendants'] ability to eliminate the safety problem without decreasing the product's usefulness and without making the product too expensive to use.

Id. The Court is satisfied that these allegations regarding the lack of a locking mechanism adequately identify the design defect in the Stryker Cart for purposes of both negligent design, see Westinghouse, 407 A.2d at 609, and strict liability, see Warner, 654 A.2d at 1274.

The defendants make much of the fact that the plaintiff does not identify exactly where on the Stryker Cart a locking mechanism should have been installed, see Defs.' Mem. at 6, given her "failure to investigate the cause of the accident," id. at 7. But the defendants do not cite any case law stating that the plaintiff, to survive a motion to dismiss a negligent design or strict liability claim, must plead where the safety device should have been installed. See generally id. at 6–10. Although the plaintiff may need to identify a feasible location for the locking mechanism to ultimately prove her claims, see Westinghouse, 407 A.2d at 611 ("A finding of unreasonable danger most often turns on the absence of a safety device that was available at the time of manufacture."); see also Warner, 654 A.2d at 1276 (noting that, "[t]o establish strict liability in tort, . . . the plaintiff 'must show the risks, costs and benefits of the product in

13

question and alternative designs'" (quoting <u>Hull</u>, 825 F.2d at 453)), she need not do that at this stage of the proceedings, where all that is required is that she plead "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678 (noting that "detailed factual allegations" are not required to survive a motion to dismiss). Accordingly, the Court concludes that the plaintiff sufficiently pleaded the existence of a defect in the Stryker Cart under theories of both negligent design and strict liability.

### 2. Causation

The defendants also argue that the plaintiff's negligence and strict liability claims must be dismissed because the Amended Complaint fails to "articulate any factual explanation of the necessary causal link between a defect in the . . . product and [the plaintiff's] alleged injuries," due to her inability to "identify with any specificity how [she] sustained her injuries in the first place." Defs.' Mem. at 10. Again, the Court disagrees.

The Amended Complaint asserts that the Stryker Cart's lack of a locking mechanism caused the plaintiff's injuries. <u>See</u> Am. Compl. ¶ 18(C); <u>see also</u> <u>id.</u> ¶ 6 (stating that "the monitor and possibly the armature became detached and fell and struck the [p]laintiff causing injury to her); <u>id.</u> ¶ 12 (claiming that the Stryker Cart "was defective in that it lacked a locking mechanism that would prevent the monitor and armature from detaching[, and] the monitor/armature could detach simply through the use of human adjustment"). In the Court's view, these allegations clearly satisfy the causation element for both negligent design, <u>see</u> <u>Westinghouse</u>, 407 A.2d at 609 (noting that manufacturers are liable under a negligent design theory "when [ ] injuries are caused by the lack of reasonable care in adopting a safe plan or design"), and strict liability, <u>see</u> <u>Warner</u>, 654 A.2d at 1274 (stating that the design defect must be "a direct and proximate cause of the plaintiff's injuries"). Accordingly, the Court concludes that

14

because the Amended Complaint alleges facts, that, if proved, assert a design defect under theories of both negligence and strict liability, the Court must deny the defendants' motion to dismiss these claims. Cf. Wetzel v. Capital City Real Estate, LLC, 73 A.3d 1000, 1007 (D.C. 2013) (reversing the trial court's dismissal of the plaintiff's strict liability claim because the complaint alleged, inter alia, that "a condominium unit was defectively dangerous," and "that the defect was the direct and proximate cause of [the] appellants' injuries which include a level of mold growth that resulted in 'unacceptably hazardous air quality,' resulting in loss of use and personal injury").

## IV. CONCLUSION

In summary, the Court grants the defendants' motion to dismiss the loss of consortium claim because Virginia law governs this claim, and Virginia does not recognize loss of consortium as a basis for liability. The Court also grants the defendants' motion to dismiss the breach of implied warranty claim because it is duplicative of the strict liability claim. However, the Court denies the defendants' motion to dismiss the negligent design and strict liability claims because the plaintiff has adequately pleaded these claims.

**SO ORDERED** this 15th day of September, 2017.[8]

REGGIE WALTON<br>
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.